[No. 15695.   Department One.—May 25, 1895.]

W. P. REDINGTON, RESPONDENT, v. PACIFIC POSTAL TELEGRAPH CABLE CO., APPELLANT.

TELEGRAPH COMPANY—STIPULATION AGAINST LIABILITY—GROSS NEGLIGENCE—BURDEN OF PROOF.—A telegraph company may reasonably stipulate upon its message blanks that it will not be liable to the sender of an unrepeated message for mistake or delay beyond the amount received for sending the same, unless it is guilty of willful misconduct or gross negligence; and the burden of proving willful misconduct or gross negligence on the part of the telegraph company devolves upon the sender of the telegram, and is not in the face of the stipulation to be presumed from the mere fact of a mistake, but must be proven by independent facts, or by circumstances connected with the principal fact, and warranting the conclusion of willful misconduct or gross negligence.

ID.—DEFINITION OF GROSS NEGLIGENCE.—Gross negligence is the want of slight care or diligence, and is either an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was indifference as to the interest and welfare of others.

ID.—NEGLIGENCE, WHEN A QUESTION FOR JURY—NONSUIT.—The question of negligence is a mixed question of law and fact; and where there is room for difference of opinion between reasonable men as to the existence of facts from which negligence may be inferred, or room for difference as to the inference which might be drawn from facts, the question of negligence is for the jury, and the court in such case does not err in denying a motion for nonsuit.

ID.—ATTACHMENT BY TELEGRAPH—DAMAGES FOR UNREPEATED TELEGRAM—SUPPORT OF VERDICT.—Where an attachment for the sum of $1,903 was sent by telegraph, and the telegram was negligently made to read $903, and as the result of the error the sender of the message was damaged in the amount of the attachment levy, a verdict and judgment for damages in the amount lost by the error will not be reversed where there is sufficient evidence to show a *prima facie* case of gross negligence, notwithstanding a conflict in the evidence and a doubt from the de-

fendant's evidence as to the correctness of the finding; and notwith-standing a stipulation limiting the liability of the defendant to the amount received for sending an unrepeated message.

ID.—EVIDENCE—MONTHLY RECEIPTS AND EXPENSES OF TELEGRAPH OFFICE. Where a telegraph office was permitted to show that the office to which the message was sent was classed as a third-class office, and the number of dispatches sent and received per day was testified to by the operator, it is not error for the court to refuse to admit in evidence a writing showing the monthly receipts and expenditures of the office, and not showing the amounts collected upon the individual messages received and sent.

ID.—CROSS-EXAMINATION—IMPEACHMENT AS TO COLLATERAL MATTER.— Where a witness upon cross-examination testifies to a collateral matter, which is not responsive to any thing concerning that which he had testified to in chief, his answer is not open to contradiction by the party cross-examining him.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Lloyd & Woods,* for Appellant.

Telegraph companies may limit their liability except for willful misconduct or gross negligence. (*Hart* v. *Western Union Tel. Co.,* 66 Cal. 579; 56 Am. Rep. 119.) Gross negligence is wanton recklessness. (Ray on Negligence, 362; *Michigan Central R. R. Co.* v. *Carrow,* 73 Ill. 348, 357; 24 Am. Rep. 248; *Missouri Pac. Ry. Co.* v. *Shuford,* 72 Tex. 165, 170; *Lassiter* v. *Western Union Tel. Co.,* 89 N. C. 335; *Grinnell* v. *Western Union Tel. Co.,* 113 Mass. 299; 18 Am. Rep. 485; *Pickett* v. *Crook,* 20 Wis. 358, 359; *Kentucky Central R. R. Co.* v. *Dills,* 4 Bush, 593; *Diamond State Iron Co.* v. *Giles,* 7 Houst. (Del.) 556; *Chicago R. R. Co.* v. *Scurr,* 59 Miss. 456, 464; 42 Am. Rep. 373; Angell on Carriers, sec. 10; *Fisher* v. *Metropolitan E. Ry. Co.,* 34 Hun, 433; *Neal* v. *Gillett,* 23 Conn. 443.) The evidence is insufficient to prove gross negligence.

*Chickering, Thomas & Gregory,* for Respondent.

The evidence is sufficient to support the finding of gross negligence. Gross negligence is a relative term,

and denotes absence of ordinary care and skill. (*Milwaukee etc. Ry. Co. v. Arms*, 91 U. S. 489; *New World* v. *King*, 16 How. 474; *Railroad Co. v. Lockwood*, 17 Wall. 382; *Telegraph Co. v. Griswold*, 37 Ohio St. 301; 41 Am. Rep. 500; *Express Co. v. Caldwell*, 21 Wall. 264; *Smith* v. *Whittier*, 95 Cal. 279; *Pegram* v. *Western Union Tel. Co.*, 100 N. C. 28; 6 Am. St. Rep. 557; *Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48.) The stipulation is invalid so far as it attempts to relieve from the consequence of any negligence, and the plaintiff makes out a *prima facie* case by production of a telegram which throws the burden on the defendant to disprove negligence. (*Pearsall* v. *Western Union Tel. Co.*, 124 N. Y. 256; 21 Am. St. Rep. 662; *Telegraph Co. v. Griswold, supra; Western Union Tel. Co. v. Tyler*, 74 Ill. 168; 24 Am. Rep. 279; *Bartlett* v. *Western Union Tel. Co.*, 62 Me. 209; 16 Am. Rep. 437; *Ayer* v. *Western Union Tel. Co.*, 79 Me. 495; 1 Am. St. Rep. 353; *Fowler* v. *Western Union Tel. Co.*, 80 Me. 381; 6 Am. St. Rep. 211; *Gillis* v. *Western Union Tel. Co.*, 61 Vt. 461; 15 Am. St. Rep. 917; *Candee* v. *Western Union Tel. Co.*, 34 Wis. 471; 17 Am. Rep. 452; *Thompson* v. *Western Union Tel. Co.*, 64 Wis. 531; 54 Am. Rep. 644; *Western Union Tel. Co. v. Crall*, 38 Kan. 679; 5 Am. St. Rep. 795; *Western Union Tel. Co. v. Howell*, 38 Kan. 685; *Stiles* v. *Western Union Tel. Co.* (Arizona, Dec. 1, 1887), 15 Pac. Rep. 712; *Western Union Tel. Co. v. Blanchard*, 68 Ga. 299; 45 Am. Rep. 480; *Pearsall* v. *Western Union Tel. Co., supra; Western Union Tel. Co. v. Short*, 53 Ark. 434; *Wertz* v. *Western Union Tel. Co.*, 7 Utah, 446; *Pepper* v. *Western Union Tel. Co.*, 87 Tenn. 554; 10 Am. St. Rep. 699; *Marr* v. *Western Union Tel. Co.*, 85 Tenn. 529; *Western Union Tel. Co. v. Cook*, 61 Fed. Rep. 624; *Brown* v. *Postal Tel. Co.*, 111 N. C. 187; 32 Am St. Rep. 793; Gray's Telegraphs, sec. 26; 2 Shearman and Redfield on Negligence, 542; Thompson on Electricity, 276, et seq.)

Searls, C.—This is an action to recover damages for the failure of the defendant (a telegraph company) to correctly transmit an unrepeated telegraph message.

Plaintiff had judgment for $555 and costs, from which judgment and from an order denying its motion for a new trial defendant appeals.

The case is this:

The defendant is a telegraph company, engaged in transmitting and receiving messages for. hire by telegraph over its lines, one of which extends from San Francisco to Visalia, in the county of Tulare, State of California.

On the twenty-eighth day of March, 1890, plaintiff caused a message to be delivered to defendant at San Francisco for transmission to Visalia, directed to D. G. Overall, sheriff of the county of Tulare, directing said sheriff to attach the property of Woodruff and Dobson under a writ of attachment issued out of the superior court of the city and county of San Francisco, in an action in which the plaintiff herein was plaintiff, and Woodruff and Dobson were defendants, which said writ was set out in the message, and commanded the sheriff to attach sufficient property of the defendants therein to satisfy plaintiff's demand for $1,903, etc.   The writ was in the usual form.

The said message was transmitted to Visalia and delivered to said sheriff, but when delivered the word "nineteen" ·in said writ was changed and altered so that it read "nine," thus causing the writ to read $903 instead of $1,903.

The writ was duly levied for $903, and before the mistake was discovered other writs of attachment were levied upon the same property.   The total receipts upon the sale of the property of the attachment debtors over and above the sum of $903 and costs, was the sum of $555, which plaintiff would have received in addition to $903 had the message been correctly transmitted.

The said message was not repeated.   Plaintiff, within thirty days after sending, duly notified defendant of his loss, and demanded satisfaction therefor.   The message was upon the usual blank of defendant, and was preceded by the following printed agreement or notice:

"All messages taken by this company subject to the following terms:

" To guard against mistakes the sender of a message should order it repeated; that is, telegraphed back to the originating office.   For. repeating one-half the regular rate is charged in addition.   And it is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruptions in the working of their lines, or for errors in cipher or obscure messages. And this company is hereby made the agents of the sender, without liability, to forward any message over the lines of other company, when necessary, to reach its destination.

" Correctness of the transmission of messages to any point on the lines of this company can be insured by contract in writing, stating agreed amount of risks, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz: One per cent for any distance not exceeding 1,000 miles, and two per cent for any greater distance.   No employee of company is authorized to vary the foregoing.

" The company will not be liable for damages in any case where the claim is not presented in writing within fifty days after sending the message.

 " JOHN W. MACKAY,  W. C. VAN HORNE,
   " President.   Vice-President."

" Send the following message, subject to the above terms, which are hereby agreed to."

Plaintiff prepaid to defendant the sum of $6.70 for

sending said message, for which sum defendant offered in its answer to permit plaintiff to take judgment under and pursuant to section 997 of the Code of Civil Procedure of this state.

The foregoing is a condensed statement of facts stipulated between counsel for the respective parties as existing in the case, and used as evidence on the part of plaintiff.

At the trial plaintiff called a single witness, W. W. Slater, an electrician, who stated that he had had twenty-seven years' experience, twenty-one years as a telegraph operator and six years as an electrician, who explained the Morse alphabetical system, etc., and who, as the substance of his testimony, gave it as his opinion that the word " teen" lost from the message in the course of transmission could not have been lost without the knowledge of the receiving operator, if competent, and that, if it was not known by the sending or receiving operator, it would be because they or one of them was not a competent operator. The witness alluded to the causes which might arrest the electric current, and gave as the central reason why a competent receiving operator should know if there was a cessation of its flow, that the rest or space of time necessary to receive the syllable *teen* (one to three seconds) would indicate to him something wrong, whereupon it would become his duty to call for a repetition.

Upon the close of plaintiff's testimony defendant's counsel moved the court for a judgment of nonsuit, upon the ground, substantially, that the message in question was transmitted over the wires of the defendant under the agreement contained in the agreed statement, and was not repeated, and that " there has been no evidence showing any gross negligence on the part of defendant corporation or its employees, and that in the absence of proof of a repetition of a message, and in the absence of proof of the gross negligence on the part of the defendant or its employees, the plaintiff has failed to make any case."

The court overruled the motion, and such ruling is assigned as error.

The message here was in all material respects identical with the one involved in the case of *Hart* v. *Western Union Tel. Co.*, 66 Cal. 579, 56 Am. Rep. 119, in which this court held that a similar stipulation, that the liability of the company for any mistake or delay in the transmission or delivery of a message shall not extend beyond the sum received for sending it unless the sender orders the message to be repeated by sending it back to the office which first received it and pays half the regular rate additional, is a reasonable precaution to be taken by the company and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated for any cause except *willful misconduct or gross negligence* on the part of the company; and that, in an action to recover damages beyond the amount stipulated, the burden of proof is on the plaintiff to show such willful misconduct or gross negligence.

The onus, then, of proving willful misconduct or gross negligence on the part of the defendant devolved upon the plaintiff, and is not, in the face of the stipulation, to be presumed from the mere fact of a mistake, but must be proven by independent facts, or by circumstances connected with the principal fact, and warranting the conclusion or inference of willful misconduct or gross negligence.   There is no claim of willful misconduct.

Did the evidence establish a *prima facie* case of gross negligence on the part of the defendant ?

The degrees of negligence are correlative to the degrees of care.   Law writers have criticised the practice of dividing negligence into degrees, and have declared that the term "*ordinary negligence*" involves a solecism, "since, if the negligence were ordinary (that is, in accordance with the usual course of practice among all men of average prudence), it would cease to be negligence at all."   (Shearman and Redfield on Negligence, sec. 48.)   The same authors admit, however, that terms

in use to define negligence are well understood, and any attempt to dispense with them would promote confusion rather than clearness of conception.

The accepted definition of gross negligence is "the want of slight care." (Shearman and Redfield on Negligence, sec. 49.)

Gross negligence is the want of slight diligence. (*Kranz* v. *Thieben*, 15 Ill. App. 482; *First Nat. Bank* v. *Graham*, 85 Pa. St. 91; 27 Am. Rep. 628; *Wright* v. *Clark*, 50 Vt. 130; 28 Am. Rep. 496; *Smith* v. *New York Cent. R. R. Co.*, 24 N. Y. 222.) Gross negligence is an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the interest and welfare of others. (*International etc. R. R. Co.* v. *Cocke*, 64 Tex. 151.)

Gross negligence is that entire want of care which would raise a presumption of a conscious indifference to consequences. (*Southern Cotton Press etc. Co.* v. *Bradley*, 52 Tex. 587.)

The question of negligence is a mixed question of law and fact, and is said to involve two questions: 1. Whether a particular act has been performed or omitted; and 2. Whether the performance or omission of this act was a breach of legal duty.

The first of these is purely a question of fact; the second a pure question of law. (Shearman and Redfield on Negligence, sec. 52.)

"The question of negligence must be submitted to the jury as one of fact, not only where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also where there is room for such a difference as to the inferences which might fairly be drawn from conceded facts. Where this is the case the issue must go to the jury, no matter what may be the opinion of the court as to the value of the evidence, or the credibility of the witnesses." (Shearman and Redfield on Negligence, sec. 54.)

Tested by this rule, the evidence on the part of plain-

tiff presented such a state of facts that the inference to
be drawn therefrom might well lead to a difference of
opinion between reasonable men, and hence become a
proper question for a jury or for the court sitting in
lieu thereof. (*Hart* v. *Hudson R. Bridge Co.*, 80 N. Y.
622; *Dahl* v. *Milwaukee etc. Ry. Co.*, 62 Wis. 652; *Central
etc. R. R. Co.* v. *Hotham*, 22 Kan. 41; *Schierhold* v. *North
Beach etc. R. R. Co.*, 40 Cal. 447.)

It follows that the court below did not err in denying
defendant's motion for a nonsuit.

The second error assigned relates to the sufficiency of
the evidence to justify the finding of the court that
" in the transmission of said telegraphic message the
defendant was guilty of gross negligence and careless-
ness, and it was because of such gross negligence and
carelessness that the words 'nineteen hundred and three
dollars' in the said message contained as written by the
sender were changed and altered to the words 'nine
hundred and three dollars.' "

The defendant introduced evidence tending to show
that the day upon which the message was transmitted
from San Francisco to Visalia (March 28, 1890) the
weather was cloudy, with light rains from San Francisco
south to Los Angeles, and that in rainy weather the
electric current is liable to be momentarily diverted
from the wire by contact of such wire with trees, build-
ings, or crossing-wires, etc., and generally upon all
branches of the case the testimony of the defendant was
sufficiently convincing that defendant was not guilty of
gross negligence to raise a grave doubt as to the pro-
priety of the above-quoted finding.

To state the evidence at length or to discuss it at
large can be of no avail, for the reason that a doubt,
however grave as to the correctness of the finding,
where as here there is a conflict in the evidence, is not,
under the settled rule of this court, sufficient to author-
ize a reversal.

We judge the case upon the facts from the cold
record, and it may well be that, had we been in the

place of the trial court, heard the witnesses as they detailed the facts, observed their demeanor and mode of testifying, the doubt which now exists as to the conclusion reached by such court would never have arisen.

The rule of this court, that the verdict of a jury or a finding of fact by a court will not be reversed, where there is a substantial conflict in the evidence upon which such verdict or finding is based, is so firmly established as to amount to a maxim.

The order appealed from cannot be reversed because the findings are not supported by the evidence.

It is further urged that the court "erred in refusing to permit defendant to show the receipts and expenses of the Visalia office."

The evidence in question consisted of a writing showing the monthly receipts and expenditures of the Visalia office during the year 1890, from which it appeared the receipts were $1,469.84, and the expenses $667.24.

The object of the testimony was no doubt to show that the Visalia office was an unimportant one, having but a small volume of business, and hence not calling for the highest capacity in an operator.

As the memorandum presented did not show the amounts collected upon the individual messages received or sent it was too indefinite to be of value in determining the volume of business.

The defendant was permitted to show, and did show, that the office at Visalia was classed as a third-class office, and the number of dispatches sent and received per day was testified to by the operator without objection.

There was no error in the ruling under these circumstances. The only other error assigned is predicated upon a ruling of the court, upon a question put to the witness F. P. Medina as follows: "Do you know what is the custom in the railroad service as regards the repeating of train orders?"

When the question was objected to, the court remarked: "I don't know myself that the railroad question is important."

Thereupon counsel for defendant stated in substance that he wanted to contradict plaintiff's witness (Slater), and show that he knows nothing about it. I want to discredit him. It would be of no consequence only to discredit their only witness, and to show that he does not know what he is talking about.

The witness, Slater, had testified that it was not usual in the railroad office to repeat messages directing the movement of trains, but this was upon cross-examination and not responsive to any thing concerning which he had testified in chief, and being upon a collateral matter, the answer was not open to contradiction. There is another answer to alleged error. The witness afterward, and without objection, testified to the very matter objected to, his answer being as follows: "I do know of messages being repeated in the railroad business. All train orders, all orders regarding the movement of trains, are repeated," etc.

The judgment and order appealed from should be affirmed.

BRITT, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.