[Civ. No. 14439.   Second Dist., Div. Three.   Sept. 6, 1944.]

HARRY G. SWINK et al., Respondents, v. GARDENA CLUB (a Corporation) et al., Appellants.

Charles W. Cradick for Appellants.

Rosecrans & Emme for Respondents.

FOX, J. pro tem.—This is an appeal by the defendant Gardena Club, a corporation, and the individual defendants Cooley and Magnano from a judgment for damages for personal injuries sustained by the plaintiffs.

The club and Cooley operated an establishment in the city of Gardena where, upon the payment of an hourly consideration, their patrons played cards. On June 26, 1942, respondents traveled by street car from downtown Los Angeles to the end of the line at Manchester and Vermont Avenue.

From this point they traveled on to the club in a station wagon operated by appellants. The station wagon was operated by appellants from the club to the car line and return on a regular schedule. This schedule was posted in four or five places in the club and also in the station wagon. No separate fare was charged for riding in the station wagon. Plaintiffs had previously used the station wagon in getting to and from the club from the end of the street car line. Mrs. Glosser (one of the plaintiffs) testified that ''It was always customary for us to get into this station wagon, because that is the only way we had of getting to town. . . .'' Upon arrival at the club, between 4:30 p. m. and 5:00 p. m., respondents entered the building and remained there seven or eight hours. During this time they played cards, paying the club the sum of thirty cents or fifty cents per hour, depending on the game played. At about 1:00 a. m. respondents left the club and boarded the station wagon to go to the street car line. En route, while traveling north on Vermont Avenue, the station wagon, which was being driven by appellant Magnano, who was an employee of the other appellants, collided with a Studebaker driven by the defendant Drake. The latter entered the intersection of 120th Street and Vermont Avenue from the east, intending to continue west on 120th Street. The driver of the station wagon swerved to the left in an effort to avoid the collision, but was unable to do so. As a result of the collision the station wagon turned over and respondents were injured. The court found that both vehicles were being negligently operated. This finding is not attacked.

The driver of the station wagon testified that it was being driven at thirty to thirty-five miles per hour, but one of the plaintiffs testified that he was driving ''around 55 miles an hour'' just prior to the accident. None of the plaintiffs remonstrated with Magnano as to the speed at which he was traveling. Vermont Avenue at the point of the accident and for some distance in each direction is a divided street, with a parkway separating the north and south-bound lanes of traffic. There were stop signs to stop traffic crossing Vermont Avenue at the intersection where the collision happened.

At the conclusion of the case counsel for appellants asked leave of court to file an amendment to the answer setting up the defense of contributory negligence on the part of the plaintiffs because of their failure to remonstrate with the

driver of the station wagon as to the speed at which he was traveling. This request was denied.

In its findings the court refers to respondents as "passengers" and found, at least by implication, that they were passengers for hire rather than guests.

Appellants present three points: (1) that respondents were guests and not passengers for hire; (2) that they were guilty of contributory negligence; and (3) that prejudicial error was committed in refusing to permit appellants to amend their answer at the close of trial to set up contributory negligence and by the court's failure to find thereon.

Were the respondents passengers for hire or guests under section 403 of the Vehicle Code? This leads to the further inquiry as to whether compensation was given for the ride. The answer to this latter proposition depends on "whether a special tangible benefit to the defendant was the motivating influence for furnishing the transportation." If it was, "compensation may be said to have been given." (*McCann* v. *Hoffman* (1937), 9 Cal.2d 279, 286 [70 P.2d 909]; *Druzanich* v. *Criley* (1942), 19 Cal.2d 439, 443 [122 P.2d 53].) In considering the applicability of this proposition Mr. Justice Shenk pointed out in the McCann case, *supra*, page 286, that "the cases indicate either by a direct holding or by recognition, that where the relationship between the parties is one of business and the transportation is supplied in the pursuit thereof for their mutual benefit, compensation has been given and the plaintiff is a passenger and not a guest." Cases illustrative of the application of the principle are: *Crawford* v. *Foster* (1930), 110 Cal.App. 81 [293 P. 841], and *Riley* v. *Berkeley Motors, Inc.* (1934), 1 Cal.App.2d 217 [36 P.2d 398], (where the rider was a prospective purchaser of an automobile which was being demonstrated); *Sumner* v. *Edmunds* (1933), 130 Cal.App. 770 [21 P.2d 159], (where plaintiff was traveling at defendant's request for the purpose of learning a paper route so that he might be able to take it if a vacancy occurred); *Haney* v. *Takakura* (1934), 2 Cal.App.2d 1 [37 P.2d 170, 38 P.2d 160], (where plaintiff accepted the ride at the behest of defendant to assist him in disposing of his oranges); *Lerma* v. *Flores* (1936), 16 Cal.App.2d 128 [60 P.2d 546], (where plaintiff went along to direct defendant as to the route to be followed); *Piercy* v. *Zeiss* (1935), 8 Cal.App.2d 595 [47 P.2d

818], (where the passenger was a prospective customer of an insurance agent); *Duclos* v. *Tashjian* (1939), 32 Cal.App.2d 444 [90 P.2d 140], (where plaintiff, a mechanic, was riding with defendant to look at a pump which the latter owned, for the purpose of determining if he could repair it); and *Druzanich* v. *Criley, supra,* (where the plaintiff agreed to share in the driving of the car). Many other cases making like application of the principle might be cited. (See, also, 16 So.Cal.L.Rev. (1943), 358.)

Although appellant Cooley sought to give the impression that the operation of the station wagon between the end of the car line and the club was for the benefit of the employees, the trial court was entitled to draw the inference that it was operated as an inducement to prospective patrons, and as a distinct service to its customers, including these respondents. It is perfectly obvious that the "motivating influence for furnishing the transportation" was the prospect of getting the riders as customers at the appellant club. This transportation was in connection with and in furtherance of appellants' business. It was for a business and not for a social purpose. Out of it appellants expected to increase the business of the club and make money. This furnished the special tangible benefit referred to in the McCann case, *supra,* page 286, and must be termed compensation.

The case most nearly analogous to this one is *Whittemore* v. *Lockheed Aircraft Corp.* (1942), 51 Cal.App.2d 605 [125 P.2d 531]. In the latter case the Lockheed Corporation built a plane at Burbank, California, for the Northwest Airlines. Under the agreement of sale, title was to pass only upon the delivery of the plane by the seller to an agent of the buyer at Las Vegas, Nevada. Instead of going to Las Vegas, Whittemore, the buyer's agent, came to Burbank. There he boarded the plane with a pilot who had been designated by Lockheed to fly the plane to Las Vegas. En route the plane crashed and Whittemore, who had not paid any fare, was killed. In an action by Whittemore's widow for damages for his wrongful death, it became important to determine whether he was a "guest" or "a passenger for hire." The suit was brought under section 11½ of the California Air Navigation Act [1929, p. 1874; Deering's Gen. Laws, Act 151] which is substantially like section 403 of the Vehicle Code. This court held, in applying the principles of the automobile "passenger" cases, that there was sufficient

evidence to have supported a finding that Whittemore was riding as a passenger. In denying a petition for rehearing the court said that "the possible desire of defendant to maintain the goodwill of an established customer would have been a proper matter for the jury to consider in determining whether there was tangible benefit accruing to defendant in transporting the representative of its customer in connection with business in hand at the time." The instant case comes squarely within the principle of the Whittemore case, *supra*, for the transportation which appellants provided for respondents was intended to forward the former's business interests.

In order to appreciate the situation at the intersection where the collision happened and to show that respondents had no opportunity to do anything to avoid the accident, and were therefore not guilty of contributory negligence, the testimony of the driver of the station wagon should be noted. He testified as follows: "A. As I was proceeding north on Vermont, as I went in the intersection of 120th Street I noticed a car come to a stop at the boulevard at 120th and Vermont. I was just about entering the intersection when out of nowhere comes a car that I did not see. THE COURT: A what came—oh, yes. A. And I said to myself, 'Well, my gosh, look at this,' and in a split second I had to try to avoid the crash. I knew that we would all have been killed if I didn't swerve with this oncoming driver, who I did not see until he was on top of me."

In view of this evidence the case of *Queirolo* v. *Pacific Gas & Electric Co.* (1931), 114 Cal.App. 610 [300 P. 487], is peculiarly applicable upon this point. In this case, plaintiff was riding in a truck operated by an employee of the defendant company. While approaching a curve on the highway, which rounds a high bank on the left, the driver crossed to the left of the center of the highway at a speed estimated from fifteen to thirty-five miles per hour. At or near the curve he met another automobile, whereupon he swerved sharply and passed down a sloping bank, overturning the truck and causing injuries to the plaintiff. According to plaintiff's testimony the truck as it rounded the curve was traveling more than twenty-five miles an hour, which she knew was too fast, but she made no protest. In holding that she was not guilty of contributory negligence the court said (p. 615): "In the case at bar it is not contended that the plaintiff could have exercised any control, or had the power to direct the opera-

tion of the truck. According to her testimony and that of the driver the approaching automobile was first seen by them when the same was approximately twenty feet away. Likewise, the truck came within the view of the driver of the automobile at about the same distance. While, as held in *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 P. 709], and *Parmenter* v. *McDougall*, 172 Cal. 306 [156 P. 460], if a passenger is aware that the driver is carelessly rushing into danger it may be incumbent upon him to take steps for his own safety; yet, as pointed out in *Marchetti* v. *Southern Pac. Co., supra* [204 Cal. 679 (269 P. 529)], these cases state the rule upon the subject of a passenger's duty in the face of a known danger, and have no application where the danger is not apparent and it is not shown that there was anything that the passenger could have done to avert the accident after the danger became known to him. The duty of a passenger to remonstrate against excessive speed is dependent upon the circumstances of the particular case. (*Dowd* v. *Atlas etc. Service Co.*, 187 Cal. 523 [202 P. 870].) It is manifest from the evidence in the present case that the driver immediately upon discovery of the approaching automobile endeavored to avoid a collision, and that the interval between the appearance of danger and the happening of the accident was too short to justify the conclusion that any act by plaintiff would have affected the conduct of the driver, or that her failure to act proximately contributed to her injuries.''

It does not appear that respondents had any better or earlier view of the car operated by defendant Drake than did the driver of the station wagon. In view of the facts and the legal principles applicable it is difficult to see how any act or failure to act on the part of the respondents in any way contributed to their injuries.

■ The trial court did not abuse its discretion in refusing to permit defendants to amend at the conclusion of the trial to set up contributory negligence. ■ Ordinarily the defense of contributory negligence must be affirmatively pleaded (*Martinelli* v. *Poley* (1930), 210 Cal. 450, 458 [292 P. 451]), but it is also established that even though there is no such affirmative defense pleaded, when the evidence adduced on behalf of the plaintiff shows contributory negligence, that defense then becomes an issue in the case. (*Hoy* v. *Tornich* (1926), 199 Cal. 545, 551 [250 P. 565]; *Queirolo* v. *Pacific Gas & Elec-*

*tric Co., supra,* p. 614; *Curtis* v. *Kastner* (1934), 220 Cal. 185, 192 [30 P.2d 26]; *O'Dea* v. *Leland* (1935), 10 Cal.App.2d 551, 554 [52 P.2d 510].) ▮ Whatever basis appellants had for pleading contributory negligence arose solely from respondents' evidence. In view of the foregoing authorities it is perfectly plain that such a pleading was not necessary in order for that issue to be before the court. Consequently no abuse of discretion could be predicated on the court's refusal to allow the amendment.

▮ Likewise, no prejudice resulted from the court's failure to find on the question of contributory negligence because under the evidence, as we have indicated, such finding would have to be against appellants. (*Miles* v. *Zadow* (1927), 87 Cal.App. 406, 411 [262 P. 396]; *Swim* v. *Ackel* (1927), 127 Cal.App. 516, 518 [15 P.2d 1110]; *County of Los Angeles* v. *Industrial Acc. Com.* (1936), 13 Cal.App.2d 69, 78 [56 P.2d 577]; *Niles* v. *Louis H. Rapoport & Sons* (1942), 53 Cal.App. 2d 644, 651 [128 P.2d 50].)

The judgment is affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.