[Civ. No. 4371.   Fourth Dist.   May 9, 1952.]

HARRY B. HOWARD, Respondent, v. ALTA CHEVROLET
COMPANY (a Corporation) et al., Appellants.

McFadzean, Crowe & Mitchell for Appellants.

O. L. Duemler and Francis L. Smee for Respondent.

BARNARD, P. J.—The plaintiff was injured in an automobile collision which occurred at 8:45 a. m. on September 7, 1950, at the intersection of Monson-Sultana Highway and Sierra Way in Tulare County. The Monson-Sultana Highway runs north and south and is a narrow concrete road normally protected by stop signs at all intersecting roads, including Sierra Way. Sierra Way is an oiled road running east and west, and is also protected by stop signs at all intersecting roads from Dinuba, 3 or 4 miles to the west, to the intersection in question. At the time in question the stop sign usually maintained at the southwest corner of this intersection, requiring eastbound traffic on Sierra Way to stop, was down and could not be seen.

An unusually dangerous condition existed at the time because this stop sign was not then in place, and because of the surrounding conditions. An irrigation ditch ran north and south to the west of the Monson-Sultana Highway, the east bank of the ditch being 18 feet from the paved road. Coming east on Sierra Way there was "a gradual rise onto the ditch crossing, and a sudden drop onto this highway here." On each side of Sierra Way the banks of this ditch were from 2½ to 3 feet higher than the surface of the Monson-Sultana Highway, and wild oats growing on these banks extended upward for another 2½ to 3 feet. The result was that the ditch banks and the wild oats concealed the high-

way from the view of anyone approaching from the west until he got within a few feet of the intersection. On the southeast corner of this intersection there was an orange grove bordered by a row of olive trees. Photographs in evidence disclose that, in the absence of this stop sign, the situation constituted a dangerous trap which would naturally affect traffic on both roads.

The plaintiff was employed by Tulare County as a maintenance man. A superior officer had instructed him and another maintenance man named Root to proceed from Visalia to Dinuba to install some lighting fixtures in the county library there. Root was given a county car and picked the plaintiff up at the courthouse. Neither of them had been assigned a car for regular use, and neither had ever driven this car before. Root was driving, with the plaintiff on the other front seat. The plaintiff testified that he would have driven the car if he had been told to, or if occasion required. They approached this intersection on their way to Dinuba at a speed of 40 to 45 miles an hour. The plaintiff testified that when they were some 270 feet south of the intersection he looked to his left to see if there was any traffic approaching from the west on Sierra Way; that he saw none; that he then looked to the east trying to see if any traffic was approaching from that direction; that he continued to look to the east until the front end of their car was in the intersection; that because of the trees he was unable to see if any traffic was coming from the east until they were actually in the intersection; that when the front end of their car was almost to the center of the intersection they were going between 25 and 30 miles an hour, and he then heard the squealing of tires on the other car; and that he then saw the other car between 45 and 50 feet away. The plaintiff had been familiar with this intersection for 20 years. He had traveled through this intersection every Sunday for a number of months, and on the preceding Sunday, September 3d, he had driven through it proceeding from west to east.

At the same time defendant Moore was approaching this intersection from the west on Sierra Way. He was employed by the other defendants as an automobile salesman, and was driving a demonstrator Chevrolet. He was on his way to see a customer and had been traveling at 45 to 50 miles an hour. He had not been over this road for more than a year, and after leaving Dinuba the road was protected by stop signs at all intersecting roads. The stop sign at the Monson-

Sultana highway was down, and he did not know that he was approaching an intersecting road until he was within 35 to 40 feet of it, as it was hidden from his view by the ditch banks and the vegetation thereon. He reduced his speed somewhat as he crossed the culvert over the ditch, and when he then saw the intersecting road he applied his brakes at first but concluded he would not be able to stop and went on across. The county car in which plaintiff was riding struck the defendants' car on its right side, the point of impact being about 4 feet east of the center of the intersection.

In this action the plaintiff alleged that he was riding as a guest in this county car and that he suffered injuries proximately caused by the negligence of the defendants. The defendants denied these allegations and, as separate defenses, alleged that the plaintiff and Root were engaged upon a joint venture, their negligence being responsible for the accident; that the plaintiff was guilty of contributory negligence; and that the accident was unavoidable insofar as the defendants are concerned.

While the evidence was conflicting in many important respects the court held, as a matter of law, that the plaintiff and Root were not engaged in a joint venture and that the plaintiff was not guilty of contributory negligence. All instructions asked for by the defendants on the doctrine of imputed liability arising from a joint venture or a joint enterprise were refused, and the court further instructed the jury that even though the driver of the county car was negligent this would not preclude a recovery by the plaintiff if the jury further found that the defendant Moore was also guilty of negligence proximately contributing to this collision. The court also refused to give instructions on contributory negligence requested by the defendants, and further gave the following instruction at the request of the plaintiff:

"I instruct you that there has been no evidence in this case of any contributory negligence on the part of plaintiff Harry B. Howard. It is, therefore, your duty to consider only the question as to whether or not defendant Hurst Dolan Moore was guilty of any negligence which proximately contributed to the happening of this accident, in arriving at a verdict on the matter of liability for damages for such injuries, if any, received by plaintiff Harry B. Howard.

The court also instructed the jury that the State Compensation Insurance Fund had filed a claim of lien in the

amount of $4,000, being its estimated liability under the provisions of the Labor Code. The jury returned a verdict in favor of the plaintiff for $14,000. When a motion for a new trial was argued the court conditionally reduced the amount of the verdict to $11,168, which was accepted by the plaintiff. This was apparently done because the court believed that his instruction about the $4,000 lien had probably misled the jury into believing that plaintiff's medical expenses amounted to $4,000. No further evidence was taken but plaintiff's counsel informed the court that the medical bills did not exceed $1,168. Judgment was entered accordingly and the defendants have appealed.

The main questions on this appeal are whether the court erred in taking from the jury the issues as to joint venture and as to contributory negligence. In deciding these questions the evidence, with the inferences therefrom, must be viewed in the light most favorable to the appellants. ■ The law is well settled that in order to come within the joint enterprise rule a passenger in an automobile must either exercise control or have the right to exercise control over its operation (*Walker* v. *Adamson,* 9 Cal.2d 287 [70 P.2d 914].) ■ Whether or not such a right of control exists depends upon the circumstances in each particular case, and usually depends upon several questions of fact which are for the jury to determine in the light of the applicable principles of law. (*Bryant* v. *Pacific Electric Ry. Co.,* 174 Cal. 737 [164 P. 385].)

■ There is no evidence here that the respondent was a guest in the county car, as he contends, and the cases he relies on do not support his contention that it must be held as a matter of law that he and the driver of the car in which he was riding were not joint venturers and not engaged in a joint enterprise. It may be said here as was said in *Collins* v. *Graves,* 17 Cal.App.2d 288 [61 P.2d 1198]:

"The appellant has cited a number of cases where the parties were not held to be engaged in a joint enterprise, but those cases are all readily distinguishable from the conditions here presented for our consideration. The following elements were lacking in the cited cases: A common employer; a common purpose; an assignment to accomplish that purpose by some superior officer representing the common employer; a trip undertaken in the conveyance belonging to the common employer; the expenses borne by the common employer, and both having a right to insist that the vehicle

belonging to the common employer be driven directly tô the destination indicated by a superior officer of the county employer, and not a trip undertaken independently by either officer; and neither officer possessing any right to deviate from the purposes of his assignment.''

All of the distinguishing elements there listed were here present. Disregarding any conflicting evidence, both the respondent and the driver of the county car were maintenance men in the employ of the county. They were directed by their superiors to go to Dinuba to perform a service for their common employer. Neither had the right to deviate from the purpose to which they were assigned and the respondent, beyond question, had the right to insist that the county car be driven directly to the assigned destination. The fact that he was not actually driving the vehicle is not controlling. (*Shook* v. *Beals,* 96 Cal.App.2d 963 [217 P.2d 56, 18 A.L.R.2d 919].) The respondent was not in the position of the ordinary guest, the driver of the car was not his superior officer, the car was not regularly assigned to the driver, they were on their way to a common job pursuant to common orders, and it might fairly be inferred, regardless of who was actually driving, that neither was in a superior position insofar as any right of control is concerned. Moreover, there is evidence that the respondent felt enough responsibility to take an interest in a matter directly affecting the operation of the car. He testified that he first looked to the west to see if any traffic was approaching and then continued to look to the east, looking for a chance to see through the trees, in order to see whether or not any cars were approaching from the east. He knew the nature of this intersection, and he displayed an active interest in the operation of the car, whether or not he did all that he should. There was some evidence that the driver of the county car was negligent, and if these parties were engaged in a joint enterprise his negligence was imputable to the respondent. Under the facts shown by the record we think the question as to whether or not these parties were engaged in a joint enterprise was one of fact, which should have been left to the jury.

A similar situation exists with respect to the issue of contributory negligence. ▉ Even where the negligence of the driver of a vehicle is not to be imputed to a passenger it has been frequently held that the passenger is bound to exercise ordinary care for his own safety; that he may not shut his eyes to an obvious danger, he may not blindly rely on the

driver in approaching a place of danger, and whether or not he has exercised ordinary care under the circumstances is usually a question of fact for the jury and not of law. (*Parmenter* v. *McDougall*, 172 Cal. 306 [156 P. 460]; *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679 [269 P. 529].)

There is strong evidence that the stop sign at the southwest corner of this intersection was down and lying in the ditch about 8 o'clock on the morning of Sunday, September 3d, and that it remained down continuously up to the time of this accident. The respondent testified that he traveled across this intersection on Sierra Way on Sunday, September 3d, going from west to east, and it might reasonably be inferred that he knew or ought to have known that the stop sign was not then in place. With this knowledge, and with his knowledge of the unusually dangerous condition at this intersection, as above described, he might well be considered as being under a duty to warn the driver of the car. (*Matsumoto* v. *Renner*, 90 Cal.App.2d 406 [202 P.2d 1051].) There can be no question that he had an ample opportunity to give such a warning. It might well be found, factually, that the respondent was not justified in assuming that this was then a through highway, protected by a stop sign at the point in question. This should also be considered in the light of the fact, well known to the respondent, that Sierra Way for a distance of several miles was also a through highway protected by stop signs, and in the light of the fact that in the absence of a stop sign the driver of a car going east on Sierra Way would probably be unable to see this intersection in time to stop. The following language in *Parker* v. *Southern Pac. Co.*, 204 Cal. 609 [269 P. 622], is appropriate here: ''On the record before us it cannot be said that the jury might not find that the plaintiff was in some degree at fault in not apprising the driver of the impending danger.'' It cannot be held here, as a matter of law, that the respondent was entirely free from negligence. (*Shields* v. *King*, 207 Cal. 275 [277 P. 1043]; *Martindale* v. *Atchison, T. & S. F. Ry. Co.*, 89 Cal.App.2d 400 [201 P.2d 48].) A factual question appears in this regard which should have been left to the jury, and the court erred in passing upon it as one of law.

The appellants further contend that the court erred in giving the instruction concerning the claim of lien for $4,000 filed by the State Compensation Insurance Fund, that this probably misled the jury into assuming that respondent's medical expenses amounted to that sum, that there is no evi-

dence of the actual amount of such medical expenses, and that counsel's statement on motion for a new trial that these expenses amounted to $1,168 is supported by no evidence. While this instruction should not have been given, at least in that form, and while the evidence upon this element of special damage is somewhat deficient those matters can be corrected upon a retrial of the action, and require no further consideration here.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.