[Civ. No. 6017.   Fourth Dist.   June 4, 1959.]

CAROLYN ANN GADBURY et al., Appellants, v. HAROLD JAMES RAY et al., Respondents.

McKinney & Ballantyne and Ralph B. Jordan for Appellants.

Maddox, Abercrombie, Kloster & Jacobus and Frederic A. Jacobus for Respondents.

GRIFFIN, P. J.—Plaintiffs and appellants Carolyn Ann Gadbury, individually, and Hazel Gadbury, by her guardian ad litem, Harold T. Gadbury, brought this action against defendants and respondents Harold James Ray and Elmer Ray, for damages for personal injuries suffered as a result of a collision between two automobiles at the intersection of County Road Number 92 and Avenue 320, in Tulare County, about 4:30 p.m. on January 13, 1957.

Plaintiffs were guests in a 1950 two-door Chevrolet automobile owned and driven by James Gadbury, brother of Hazel Gadbury, who later married plaintiff Carolyn Ann Bray. This Chevrolet collided with a 1950 four-door Oldsmobile car owned by defendant Elmer Ray and driven by defendant Harold J. Ray.

County Road Number 92, approximately 16 feet wide, was a rough-oiled surface road running north and south. Avenue 320 was a fairly good oiled-surface road approximately 18 feet wide, running east and west. There were no control or stop signs at this intersection and no obstruction of view for northbound or westbound traffic, with the exception of some low brush and wire fence. It was described as an "open intersection" in open, uninhabited country. The weather was clear, visibility good, and the surface of the road was dry. Plaintiffs were traveling west on Avenue 320. Defendant Harold Ray was proceeding north on County Road Number 92. At the trial he was called by plaintiffs, under section 2055 of the Code of Civil Procedure and testified that he was driving the Oldsmobile automobile on County Road Number 92, and saw no other traffic at all; that he stopped at a boulevard stop intersection about one mile south of the intersection here in question and then proceeded north at about 45 to 50 miles per hour; that as he approached the intersection here involved he looked to his left for about 40 seconds and saw no traffic, then looked to his right about 50 feet before he entered the intersection and then, for the first time, noticed the Chevrolet car about 50 feet east of the intersection; that just before then he had his foot off of the throttle and was traveling about 40 miles per hour; that he did not apply the brakes; that he could not estimate the speed of the Chevrolet

car at that time; that when his car reached the center of the intersection the front end of the Chevrolet struck the center of the Oldsmobile car, knocking him out of his car and causing injury to him.

Plaintiff Carolyn Ann Gadbury testified generally that all she remembered was that James Gadbury picked her up in his Chevrolet car that evening; that she remembered riding in the car in the front seat between James and Hazel; that she had ridden with James many times before and he was a careful driver, and that she did not feel she should help watch the road; that she did not remember the highway approaching this intersection; that she thought she had ridden over this road before; that she did not pay any particular attention to it or any intersection and did not remember which way she was looking just before the accident; that she knew where the road was; and that after the accident she woke up in the hospital.

James Gadbury, aged 19, who was injured in the accident, testified he did not even remember picking up Carolyn that day and did not remember anything about the accident until the next morning; that he had driven with her on many occasions before this and never drove recklessly and did not recall ever going through intersections at high rates of speed; that he later found out where the accident happened and he had driven over this road many times and was fairly familiar with the area; that he vaguely remembered telling the officers the next day he didn't see the other automobile and that this was a fact.

Plaintiff Hazel Gadbury testified the three of them left her house about 3 p.m.; that she was seated in the front seat near the right door; that they were driving on Avenue 320; that she remembered when they reached a point about one block from the intersection here involved; that James was then driving about 35 miles per hour; that she was somewhat accustomed to keeping her eye on the road and she does not remember of any warning given; that she did not remember anything after that; that after the collision she was lying out in a muddy field with the Chevrolet car behind her and Carolyn and James were near by; that she remembered speaking to James who was looking for Carolyn, and all were taken to the hospital. All claimed they were unable to testify as to any facts in reference to the accident and collision because of retrograde amnesia caused by shock.

As to the physical facts, photographs of the two roads, the intersection depicting the position of the cars and the surrounding area after the accident were taken and are in evidence. The California Highway Patrol investigating officer testified generally that the point of impact was near the center of the intersection; that there was no indication of any skid marks made by the respective cars prior to the collision, although there were certain skid marks from the intersection extending back about 42 feet easterly on Avenue 320; that he believed at first they were made by the Chevrolet car but later he concluded they were made by some other car; and that tire marks, 42 feet in length, did lead from the point of impact westerly to the position where the Chevrolet came to a stop, about 18 feet north of the roadway of Avenue 320 and about 18 feet west of the westerly edge of Roadway Number 92. The entire front portion of the Chevrolet was badly demolished. The Oldsmobile was found farther north in a northwesterly direction from the intersection, resting on its side against an anchor post of an electric pole. There were tire marks leading from the point of impact and running in a general northwesterly direction for about 66 feet before the Oldsmobile car turned over against the pole. The major damage to it was on its right side near the center door-post indicating the point of collision with the front of the Chevrolet car. These observations were made by the officers about five minutes after the accident.

Three contentions are made on this appeal. (1) Error in an instruction given and error of the court in instructing the jury on the issue of contributory negligence on the theory there was no substantial evidence supporting it, citing such authority as *Badostain* v. *Pacific Electric Ry. Co.*, 83 Cal.App. 290 [256 P. 576]; *Buttrick* v. *Pacific Electric Ry. Co.*, 86 Cal.App. 136 [260 P. 588]; *Whitman* v. *Steiger*, 46 Cal. 256; *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386 [223 P. 2d 862, 21 A.L.R.2d 1206]; *Lasater* v. *Oakland Scavenger Co.*, 71 Cal.App.2d 217, 221 [162 P.2d 486]; *Fugelsang* v. *Steiner*, 115 Cal.App. 167 [1 P.2d 553]; *Bardin* v. *Case*, 99 Cal.App.2d 137, 142 [221 P.2d 292]; *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679, 683 [269 P. 529]; *Wilding* v. *Norton*, 156 Cal. App.2d 374, 379 [319 P.2d 440]; *Thompson* v. *Los Angeles, etc. Ry. Co.*, 165 Cal. 748 [134 P. 709]; *Rush* v. *Lagomarsino*, 196 Cal. 308, 316 [237 P. 1066]; *Gigliotti* v. *Nunes*, 45 Cal.2d 85 [286 P.2d 809]; *Murphy* v. *Atchison, T. & S. F. Ry.*, 162 Cal.App.2d 818 [329 P.2d 75]; *Scott* v. *Burke*, 39 Cal.2d

388 [247 P.2d 313]; and *Swink* v. *Gardena Club,* 65 Cal. App.2d 674 [151 P.2d 313]. Defendants argue otherwise and cite such authority as *Miller* v. *Atchison, T. & S. F. Ry.,* 166 Cal.App.2d 160, 169 [332 P.2d 746]; *Martindale* v. *Atchison, T. & S. F. Ry.,* 89 Cal.App.2d 400 [201 P.2d 48]; *Lugo* v. *Atchison, T. & S. F. Ry. Co.,* 128 Cal.App.2d 402 [275 P.2d 605]; *Howard* v. *Alta Chevrolet Co.,* 111 Cal. App.2d 38 [243 P.2d 804]; *Seefeldt* v. *Pacific Greyhound Lines,* 155 Cal.App.2d 853 [318 P.2d 723]; *Miller* v. *Peters,* 37 Cal.2d 89 [230 P.2d 803]; *Parmenter* v. *McDougall,* 172 Cal. 306 [156 P. 460]; and *Hoffart* v. *Southern Pac. Co.,* 33 Cal.App.2d 591 [92 P.2d 436]. An analysis of the evidence presents a very close question on this point.

It is a general rule in respect to a passenger in a motor vehicle that he has the duty to exercise ordinary care under the conditions in which he finds himself and which should influence his conduct for his own safety; that while he cannot be presumed to know everything the operator must know, he cannot ignore the speed at which a car is traveling or the manner in which it is being operated; that he must be reasonably alert to conditions that would affect his own safety, but he does not have the absolute duty the operator has to know at what speed the car can be driven with safety.

Negligence of the operator with respect to speed is not necessarily negligence of the passenger, and the conduct of the passenger must be judged in the light of the conditions under which he acts or fails to act, and in accordance with the general principles of negligence. If the passenger knew, or in the exercise of ordinary care should have known, that the car was being operated at an unreasonably high or imprudent speed and voiced no objections, under the conditions above mentioned, he may be guilty of contributory negligence, and if such negligence contributed proximately to the accident he cannot recover. It has been held that if circumstances are such that danger of collision does not become apparent to the guest in time to remonstrate, the guest's failure to caution the driver does not constitute contributory negligence, and this is true though the guest fails to maintain a lookout or observe the traffic on the highway. (7 Cal.Jur.2d, p. 249, § 342; *Hagen* v. *Metzger,* 130 Cal.App. 497 [20 P.2d 117]; *Wilding* v. *Norton,* 156 Cal.App.2d 374 [319 P.2d 440].) The burden of showing contributory negligence of the guest is upon the driver of the car by whose negligence

he is injured and in the absence of any showing to that effect the plaintiff in a death or loss of memory case may rely upon the presumption that the guest exercised due care for his own safety, in which event an instruction on contributory negligence should not be given. (7 Cal.Jur.2d 253, § 342; *Stoneburner* v. *Richfield Oil Co.*, 118 Cal.App. 449 [5 P.2d 436]; *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 P. 1066]; *Gigliotti* v. *Nunes*, 45 Cal.2d 85 [286 P.2d 809]; *Scott* v. *Burke*, 39 Cal.2d 388 [247 P.2d 313].)

*Swink* v. *Gardena Club*, 65 Cal.App.2d 674 [151 P.2d 313], involved passengers in a station wagon colliding with another car at an intersection. One of the plaintiffs, a passenger in the station wagon, placed its speed as high as 50 miles an hour just prior to the accident. The court there refers to the cases of *Thompson* v. *Los Angeles & S. D. B. Ry. Co.*, 165 Cal. 748 [134 P. 709]; and *Parmenter* v. *McDougall*, 172 Cal. 306 [156 P. 460], and, quoting from *Queirolo* v. *Pacific Gas & Electric Co.*, 114 Cal.App. 610, said, at page 615 [300 P. 487]:

" ' . . . if a passenger is aware that the driver is carelessly rushing into danger it may be incumbent upon him to take steps for his own safety; yet, as pointed out in *Marchetti* v. *Southern Pacific Co., supra,* [204 Cal. 679 (269 P. 529)], these cases state the rule upon the subject of a passenger's duty in the face of a known danger, and have no application where the danger is not apparent and it is not shown that there was anything that the passenger could have done to avert the accident after the danger became known to him. The duty of a passenger to remonstrate against excessive speed is dependent upon the circumstances of the particular case. . . . It is manifest from the evidence in the present case that the driver immediately upon discovery of the approaching automobile endeavored to avoid a collision, and that the interval between the appearance of danger and the happening of the accident was too short to justify the conclusion that any act by plaintiff would have affected the conduct of the driver, or that her failure to act proximately contributed to her injuries.' "

It then said: "It does not appear that respondents had any better or earlier view of the car operated by defendant Drake than did the driver of the station wagon. In view of the facts and the legal principles applicable it is difficult to see how any act or failure to act on the part of the respondents in any way contributed to their injuries."

It appears manifest from any inferences here allowable and from the evidence adduced in the instant case that the interval between the appearance of a danger and the happening of an accident was too short to justify the conclusion that any act of plaintiffs would have affected the conduct of the driver of their car or that their failure to act proximately contributed to their injuries. The evidence does not indicate that plaintiffs did become aware of any danger or if they did, there was anything that could have been done by plaintiffs, after they became aware of the danger, which would have averted the collision. Plaintiffs were clothed with the presumption of due care on their part. The burden of showing their contributory negligence was upon defendants. We are convinced that the evidence presented does not show that defendants here met this burden.

The cases cited by defendants uniformly presented additional circumstances justifying a reasonable conclusion, from the nature of the danger the passenger was approaching and his awareness of it, that ordinary care required some action on his part which might have avoided the collision. A different factual situation arises in railway crossings of streets and highways pertaining to notice of danger, such as in *Miller* v. *Atchison, T. & S. F. Ry. Co.*, 166 Cal.App.2d 160 [332 P.2d 746], in reference to railroad tracks (which in themselves are some indication that a train does pass over them on occasions [*Loftus* v. *Pacific Electric Ry. Co.*, 166 Cal. 464 (137 P. 34)]), where there were railway crossarms, painted signs on the pavement, and other signs indicating a railroad crossing and that care should be taken at such crossing. (See *Chinnis* v. *Pomona Pump Co.*, 36 Cal.App.2d 633 [98 P.2d 560], and cases relied upon by plaintiffs.)

(2) Under the circumstances the next question pertaining to the claimed erroneous form of instruction given on the doctrine of contributory negligence becomes moot.

(3) There is one other question involved. It pertains to the rejection by the court of proffered evidence by plaintiffs showing the conduct of defendant driver, in driving 80 to 90 miles per hour just before entering an intersection one mile south of the intersection here involved, traveling through a boulevard stop intersection at 60 miles per hour, and then continuing on at about 80 or 90 miles an hour up the road all within a minute's time prior to the accident. There were no other intersections between these two. Plaintiffs concede in

their argument to this court on appeal that the admission of such previous acts and the speed of the car may be held to be too remote, in point of time, unless abuse of discretion appears, citing *Jennings* v. *Arata*, 83 Cal.App.2d 143, 147 [188 P.2d 298]; and *Gritsch* v. *Pickwick Stages System*, 27 Cal.App.2d 494, 497 [81 P.2d 257]. We will therefore assume such ruling would be authorized in this case. However, it appears from the record at the trial that upon cross-examination of defendant, under section 2055, Code of Civil Procedure, by plaintiffs' counsel, the trial court allowed the witness to testify, over objection of plaintiffs' counsel, on the ground it was "irrelevant and immaterial," that he stopped his car at the first intersection and then traveled about 45 to 50 miles per hour up the highway to the next intersection, and that this was the highest speed he attained. The court allowed him to answer with the statement that it was for the purpose of testing his recollection. Thereafter plaintiffs offered the testimony of two independent witnesses who were near the first intersection when defendants' car approached it and said they would testify defendants' car was traveling according to the proof offered, and that he failed to make a boulevard stop; that there was no indication of a decrease in speed after they last noticed him, and that they went up to the scene of the accident and again identified defendants' car. Defendants' counsel objected to the offer on the ground it would be impeaching the witness on a collateral matter and was accordingly not allowable. The exact ruling of the court on the admissibility of this so-called impeaching evidence is confusing. It said: "Counsel . . . have satisfied the court, at this time that it can be admitted, and that is my ruling. I am going to sustain his objection without prejudice." It does not appear that any further offer was made or that the court again considered it. ■ The rule is, as contended by defendant, that a witness may not be impeached on immaterial and irrelevant matters, but otherwise it may be done, if material and relevant to the issues. ■ A matter is relevant to issues justifying impeachment thereon if it tends to illustrate or throw light on the transaction involved. (*Redington* v. *Pacific Tel. Cable Co.*, 107 Cal. 317 [40 P. 432, 48 Am.St. Rep. 132]; *Moody* v. *Peirano*, 4 Cal.App. 411 [88 P. 380]; *Hyland* v. *Millers Nat. Ins. Co.*, 58 F.2d 1003 [cert. denied], 303 U.S. 645 [58 S.Ct. 644, 82 L.Ed. 1107]; *Batchelor* v. *Caslavka*, 128 Cal.App.2d 819 [276 P.2d 64]; 20 So.Cal.L. Rev. 102.)

The court, in the first instance, allowed the witness to testify under section 2055 of the Code of Civil Procedure over the objection noted, and apparently held that the testimony was material and relevant although it apparently limited its application to the question of testing the memory of the witness. ■ A person calling an adverse party is not bound by his testimony and he may rebut it by other evidence. (Code Civ. Proc., § 2055; *Cioli* v. *Kenourgios,* 59 Cal.App. 690 [211 P. 838]; 27 Cal.Jur. p. 67, § 50.) See also *Coos Bay Mfg. Co.* v. *California Selling Co.,* 29 Cal.App. 407 [155 P. 817], where the party calling the adverse witness was allowed to impeach his testimony by other evidence.

■ Considering the fact that the trial court did, in the first instance, allow the testimony of defendant that he stopped at the first intersection and did not go over 40 to 45 miles thereafter to be given, as material and relevant, and allowed it to remain in the case, it would appear only reasonable that the jury should have had the full facts presented on this question either by way of impeachment or in some other proper manner, as bearing on defendant's negligence, memory, or his veracity as to what happened that afternoon. It appears to us that a new trial should be had in accordance with the conclusions here reached.

Judgment reversed.

Mussell, J., and Shepard, J., concurred.

A petition for a rehearing was denied June 22, 1959, and respondents' petition for a hearing by the Supreme Court was denied July 29, 1959.