[Civ. No. 6864.   Fourth Dist.   Nov. 19, 1962.]

BERNICE VAN PELT, Plaintiff and Appellant, v. JOHN W. CARTE et al., Defendants and Respondents.

Hennigan, Ryneal & Butterwick and Fred H. Ryneal for
Plaintiff and Appellant.

King & Mussell and John Lewis King for Defendants and Respondents.

SHEPARD, J.—This is an appeal by plaintiff from a judgment in favor of defendant in a personal injury action.

## FACTS

On November 18, 1958, between 1:15 and 1:30 p. m. on a dry, clear day, plaintiff was riding as a guest passenger in the right hand front seat of the Hudson automobile owned and driven by her father, Walter Whittaker, in a northerly direction on Riverside Avenue (hereinafter called Avenue) at its intersection with U.S. Highway 99 (hereinafter called Highway) a few miles west of San Bernardino. At said intersection the travelled portion of Avenue was about 36 feet wide, with one lane for northbound and one lane for southbound traffic. Highway runs generally east and west with two marked lanes for eastbound and two marked lanes for westbound traffic, each lane a width of 12 feet, an unimproved center parkway of 84 feet. A shoulder 12 feet wide abutted the south traffic lane of Highway. Even with the south side of said shoulder facing northbound traffic stood a stop sign and across the northbound lane were painted on the road surface the white stop bars. Plaintiff says that the Hudson stopped "at the Highway."

Witness Daly said that he saw a car "setting" there. Later he said that when he "saw" it, "It started to move." Defendant says that he saw the Hudson stop and when he next saw it, it was stopped at the south edge of the eastbound lanes. The fourth eyewitness first saw the Hudson when it was already in the south lane of the Highway. There is, then, no conflict on the subject of the Hudson having stopped somewhere near the south edge or shoulder of Highway and that it thereafter started and moved directly into the path of defendant's car in the Highway's northerly eastbound lane.

Of the three witnesses who remember the action of the various cars immediately prior to the accident, there is little serious conflict. At this point, Highway stretches straight west more than 2 miles. At a point 750 to 1,000 feet west of the intersection, three cars, spaced one behind the other, were proceeding east in the south lane of Highway at about 45 to 50 miles per hour. At about that point, defendant's car, a Pontiac, moved to the northerly eastbound lane and started to pass the other two cars, slightly increasing his speed. He then saw the Hudson come from the south on Avenue and

stop at the south edge of the shoulder of Highway. Defendant also saw, in his own lane, a long truck with semi-trailer going east, signalling a left turn to proceed north on Avenue. Defendant allowed his car to slow somewhat, waiting for the truck to make the turn and clear the intersection. When the truck made the turn it stopped at the westbound lanes of Highway, blocking the northbound lane of Avenue but clearing defendant's eastbound lane. The southbound lane of Avenue was also blocked by a car stopped at the stop sign about 6 feet north of the northerly edge of the eastbound lanes. When the truck cleared defendant's lane defendant speeded up somewhat. At 400 to 500 feet from the intersection defendant again looked at the Hudson. It had moved about 8 feet to the south edge of the south lane but was stopped. Defendant's attention then returned to the truck. When he next noticed the Hudson he was 50 to 100 feet from the Hudson, travelling at 45 to 55 miles per hour and the Hudson was moving into defendant's lane, i.e., the northerly eastbound lane. It was then too late to avoid the collision. Defendant attempted to turn his car and put on the brake. The highway showed no tire marks and it seems likely that the brakes never took hold. Estimates of speed of defendant at point of impact range from 40 to 55 miles per hour. The Hudson was stopped or moving very slowly. It was 9 or 10 feet from the rear of the truck trailer. The rear of the truck trailer was about 6 feet north of the north edge of the eastbound lanes. Exactly how far steel extended over the end of the truck is not clear but it did have a red flag tied to it. Thus, the Hudson had the defendant's lane of travel blocked. The record is not entirely clear as to whether the cars in the southerly eastbound lane passed behind the Hudson before or after the instant of impact. Defendant did not notice them. Witness Daly was not clear on the point. As to the immediate events of the accident, plaintiff testified, ''I remember stopping at the highway, pulling across the highway and my father putting on the brake, which surprised me.''

Later, in answer to the question by defense counsel, ''Now, did you look for traffic after the car was stopped and before it started up?'' Plaintiff said, ''I don't know.''

Plaintiff had no further memory of the events of the accident. The jury returned a verdict for defendant.

## CONTRIBUTORY NEGLIGENCE

Instructions included standard form instructions on contributory negligence. Plaintiff does not criticize the form of

the instructions but contends that it was prejudicial error to instruct on the issue of contributory negligence because there was no evidence whatever of contributory negligence on the part of plaintiff.

On the other hand, defendant contends that plaintiff's own testimony shows that she was awake and alert and did notice that the car stopped at the highway, started forward again and the brake was put on, surprising her; that from this the jury were entitled to infer that plaintiff saw that three cars were bearing down on the car in which plaintiff was riding, that directly ahead the Avenue was blocked, that imminent danger was apparent, and that plaintiff was obligated to call the driver's attention thereto or to protest at moving forward.

The rule of law defining a guest's duty to observe traffic is concisely stated in *Robinson* v. *Cable*, 55 Cal.2d 425, 427 [2] [11 Cal.Rptr. 377, 359 P.2d 929], as follows: "In the absence of some fact brought to his attention which would cause a person of ordinary prudence to act otherwise, a person riding in an automobile is not charged with the responsibility of observing the condition of the traffic on the highway, and his mere failure to do so, without more, will not support a finding of contributory negligence."

In *Pobor* v. *Western Pac. R.R. Co.*, 55 Cal.2d 314, 324 [13, 11b] [11 Cal.Rptr. 106, 359 P.2d 474] the same rule is stated in different words.

From the foregoing it is clear that if, from the evidence, the jury could legitimately draw some inference showing that contributory negligence on the part of plaintiff proximately contributed to the causation of the accident and injuries complained of, the giving of the instruction on contributory negligence is proper and the question becomes one of fact for the jury. If the evidence does not admit of any such inference the giving of the instruction is error.

Defendant appears to consider the testimony of a doctor relating to plaintiff's statement at the hospital that she had no recollection of the accident, in which testimony the doctor indicated that the lack of memory at that time (in the hospital) was probably due to medication, would permit the jury to infer that plaintiff's testimony at the trial to the effect that she only remembered certain things, was false. We are unable to follow defendant's reasoning to the results claimed. Plaintiff's injuries included fractures of the left arm, a collarbone, some ribs, zygoma or cheekbone and other facial bones, as well as multiple fractures of the skull, including the frontal region

and the left side of the skull extending down into the base of the skull. (Many of the facial and cranial fractures we cannot identify because much of the testimony referred to exhibits and no exhibits were brought to us.) The doctor was directly asked about retrograde amnesia (loss of memory of events preceding the blow). He answered, "It is difficult to state. . . ."

In any event, it must be remembered that the burden of proof on defendant's defense of contributory negligence rests on the defendant, not the plaintiff.

As was said in *Gadbury* v. *Ray*, 171 Cal.App.2d 150, 155 [4] [340 P.2d 66], "The burden of showing contributory negligence of the guest is upon the driver of the car by whose negligence he is injured and in the absence of any showing to that effect the plaintiff in a death or loss of memory case may rely upon the presumption that the guest exercised due care for his own safety, in which event an instruction on contributory negligence should not be given."

Unless contributory negligence appears from plaintiff's own evidence, defendant must plead and prove it. (*Martinelli* v. ·*Poley*, 210 Cal. 450, 458 [5] [292 P. 451].)

Conjecture, surmise and guesswork may not give rise to an affirmative finding of fact. As was said in *Bardin* v. *Case*, 99 Cal.App.2d 137, 142 [1] [221 P.2d 292], ". . . An inference of fact must be based upon *substantial* evidence, not conjecture. 'In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, and when the evidence is not sufficient to draw such inference, the court should refuse to submit the question to the jury.' " See also *Marshall* v. *Parkes*, 181 Cal.App.2d 650, 655 [4-5] [5 Cal.Rptr. 657].

On the facts presented, we have no evidence whatever that plaintiff saw or heard anything prior to the accident which would cause an ordinarily reasonable person to doubt the reliability of her father as a driver or that danger threatened which required her survey of traffic. There was no evidence suggesting she knew three cars were approaching from the west or that she ever looked ahead and saw Avenue blocked in the intersection. There was no evidence that she had any reason to believe that her father did not observe and take into consideration all the action described in the evidence. Prior

to the accident she may have had her attention on a bird flying, a tree, the mountains, a house, or any other of a hundred things. Her peripheral vision and subconscious mind may as easily have been responsible for her memory of stopping at the highway, going forward, and the brakes going on. There is no evidence that she was familiar with this particular crossing or had reason to believe it was dangerous. There simply is nothing from which an affirmative inference can arise that a fact came to her attention from which she as an ordinarily reasonable person should have taken warning of danger to herself. ▮▮ But defendant asserts that this evidence is supplied by the right of the trier of fact to infer that the plaintiff did in fact see that which was in plain sight. The fallacy of applying such a rule in the case at bar is at once apparent. Actually, the rule is applied in only two classes of circumstance applying to motor vehicle negligence cases. (1) Where the evidence warrants the belief that the actor involved *did* look, as exemplified by *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 626 [255 P.2d 785]; (2) Where the actor is under a duty to look, exemplified by *Bergman* v. *Bierman,* 138 Cal.App.2d 692, 696 [7] [292 P.2d 623].

We have reviewed at length the many authorities cited by defendant to the effect that, as a general rule, the question of contributory negligence is one of fact for the jury. None of them recite a different rule from that quoted above from *Robinson* v. *Cable, supra.* Those cases sanctioning the giving of the contributory negligence instruction arise either from railroad crossing accidents where crossing signs, tracks, clanging bells, blowing whistles, flashing lights, engine noises or some combination thereof are present, or where actual knowledge of danger or participatory advice in driving is present. *Daniels* v. *City & County of San Francisco, supra; Miller* v. *Atchison T. & S. F. Ry. Co.,* 166 Cal.App.2d 160 [332 P.2d 746]; *Martindale* v. *Atchison T. & S. F. Ry. Co.,* 89 Cal.App.2d 400 [201 P.2d 48]; *Lugo* v. *Atchison T. & S. F. Ry. Co.,* 128 Cal.App.2d 402 [275 P.2d 605]; and *Parker* v. *Southern Pacific Co.,* 204 Cal. 609 [269 P. 622], exemplify the types.

Since the guest's ''duty to look'' does not arise until some factor of danger comes to his attention, thus charging him as a person of ordinary prudence to take observation for his own safety, and since no such factor appears in this case, we are unable to apply the duty to plaintiff. Since nothing in the evidence indicates she did, in fact, look at the traffic condition,

no inference on either score can arise. ▮▮▮ Defendant completely failed in its burden of proof as to contributory negligence and plaintiff's own evidence produced nothing to show contributory negligence on her part. The contributory negligence instruction should not have been given.

PREJUDICE

The question of prejudice is not simple. ▮▮▮ In *People v. Watson*, 46 Cal.2d 818 [299 P.2d 243], at page 836, the mandate of section 4½ of article VI of our Constitution is interpreted by our Supreme Court as follows: "That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that *it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."* (Italics ours.)

▮▮▮ In the instant case defendant appears to have approached the intersection at about 55 miles per hour. At 800 to 1,000 feet away, his speed while pulling around two other cars, is estimated at 50 to 60 miles per hour. Immediately prior to impact, defendant had 50 to 100 feet in which to react and do something to avoid a collision. Just where the two cars in the right hand lane were is not clear. The sum total of the testimony makes clear that they cut in behind the Hudson. Clearly, they were occupying the south lane. The whole time from defendant's first view of the Hudson in a stopped position near the stop sign to point of impact was only about 10 to 12 seconds. From the second time defendant saw the Hudson stopped at the south edge of Highway to impact was five to six seconds. His attention went back to check the action of the truck which was just clearing his lane. He had no reason to believe the Hudson, stopped when he last looked, would move forward, for defendant's car was an obvious immediate hazard. When the Hudson appeared in his lane, about 3/5 to 1-1/5 seconds remained for reaction time and action itself to avoid the accident. Defendant's general outline of the action picture is well corroborated by the only other witnesses. Daly placed defendant a little closer to the intersection when defendant started to pass the other two cars. There were slight differences in speed estimates. But there were no conflicts that suggest any different possible results. As we have heretofore pointed out, there is no evidence that the plaintiff herself looked at or saw any of the approaching vehicles. It is unbelievable that if

the plaintiff's driver had looked at and noticed the approaching vehicles in the position they were in and he was in that he would have proceeded into their path at a time when they could no longer avoid him. It is difficult to see how the jury could have reasonably concluded otherwise than that the sole proximate cause of the accident was the negligent driving of the Hudson directly into the intersection at a time when defendant's car was clearly approaching so closely on Highway as to constitute an immediate hazard. By this time there was no escape for either vehicle. (Veh. Code, § 552, now § 21802.) We do not, in this case, have direct help from the jury as was present in *Marques* v. *Hill,* 191 Cal.App.2d 777 [13 Cal.Rptr. 168], but in some respects, the conclusion as to proximate cause is even more clearly certain than in that case. Having this view of the evidence, we are not able to find that the error referred to was prejudicial.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.