[No. B008866. Second Dist., Div. Three. May 6, 1986.]

FEDERICO DE VERA, Plaintiff and Respondent, v.
LONG BEACH PUBLIC TRANSPORTATION COMPANY,
Defendant and Appellant.

[No. B011615. Second Dist., Div. Three. May 6, 1986.]

FEDERICO DE VERA, Plaintiff and Appellant, v.
LONG BEACH PUBLIC TRANSPORTATION COMPANY,
Defendant and Respondent.

**Counsel**

Joseph L. Shalant for Plaintiff and Appellant and Plaintiff and Respondent.

Raymond T. Kaiser and J. Rodney DeBiaso for Defendant and Appellant and Defendant and Respondent.

**Opinion**

**DANIELSON, J.**—Defendant Long Beach Public Transportation Company appeals from a judgment awarding plaintiff Federico De Vera $17,500 as

damages for injuries he sustained when another motor vehicle ran into the rear end of defendant's bus. The fundamental question presented by defendant's appeal is whether a common carrier owes a duty to its passengers to investigate an accident caused by a third party for the purpose of facilitating a claim by the passenger against the third party tortfeasor. We hold that it does, and affirm the judgment.

In a consolidated appeal, plaintiff appeals from an order made after judgment denying his motion for relief pursuant to Code of Civil Procedure section 473 from an award of attorney fees made pursuant to Code of Civil Procedure section 128.5. We affirm the order.

## FACTS

Plaintiff sustained injuries when a bus owned and operated by defendant was rear-ended by a vehicle owned and operated by a third party. He filed a complaint alleging, inter alia, that defendant, through its employees, "negligently lost or failed to obtain the identity of the motor vehicle and its driver that rear-ended or otherwise collided with defendant's bus in which plaintiff was a passenger on September 7, 1982." Plaintiff alleged that defendant "owed a legal duty to plaintiff to obtain and safekeep this information about the other vehicle and its driver in order that plaintiff could recover against said parties for his personal injuries and other losses sustained as a proximate result of the aforesaid collision. Defendant's representatives had ample opportunity to obtain the needed identifying information and at all times knew or should have known that plaintiff was relying on defendants to obtain and safekeep this information. As a proximate result of defendants' aforesaid negligence, plaintiff has been deprived of pursuing a claim against the driver of the other motor vehicle and other related parties involved in the collision . . . . Defendants are, therefore, legally liable to plaintiff for what plaintiff would have been entitled to receive from the other parties had defendants obtained the aforementioned information."

At the outset of the trial, and out of the jury's presence, the court ruled that "the bus company, as a common carrier and because [plaintiff] was a passenger on its bus, did have a special relationship with [plaintiff]." This ruling was thereafter treated by the court and both parties as establishing a duty on the part of defendant to investigate the accident and to preserve the fruits of its investigation for the purpose of assisting plaintiff in future civil litigation.

In the course of the trial, the parties presented conflicting evidence as to the events immediately following the collision. Plaintiff's witness, Jacqueline Lang, testified that she was seated toward the rear of the bus when it

was rear-ended by a pick-up truck, that the bus driver left the bus and spoke with the driver of the pick-up, then returned to the bus and obtained a pen, following which he resumed his conversation with the other driver, apparently exchanging information with him. Plaintiff also testified that the driver left the bus and spoke with the truck driver.

The bus driver, Aubra Alan Cowell, testified that his investigation revealed only that the bus was struck by a large Buick, which failed to stop, and that he therefore failed to obtain any information as to the identity of its driver.

Cowell testified that he radioed his dispatcher to report the accident while still on the scene, and filled out an accident report describing the other driver as "unknown," upon his return to the yard. Cowell testified that he was not asked by any of the bus passengers to obtain information relating to the other driver, that he did not tell any of the passengers that he was collecting such information, and that none of the passengers stated that they were relying on him to obtain such information. He stated that he did obtain five or six courtesy cards from potential witnesses which he delivered to his dispatcher along with his accident report at the end of his shift.

Plaintiff testified that he did not perceive the bus driver as collecting information on plaintiff's behalf.

On the day following the accident, and again approximately two weeks later, the passenger, Lang, was told by defendant's representatives that the company had not received an accident report.

Plaintiff's daughter-in-law took him to defendant's office the day following the accident. The person they spoke with suggested that plaintiff see a doctor, and gave him the name and either the telephone number or the address of a person to contact concerning the accident.

Defendant's answers to certain interrogatories were read to the jury. Asked whether the accident was reported to defendant or its agents or employees by persons other than plaintiff or those acting on his behalf, defendant responded that the occurrence was reported by one Jackie Brusard (Lang) to defendant's agent, Carl Warren and Company, on September 9, 1982. Asked whether one of its buses traveled a route including Pacific Avenue at 21st Street in September 1982, and to furnish the names of all drivers who drove the route during that month, defendant objected to the interrogatories on the grounds that they were not reasonably calculated to lead to the discovery of admissible evidence, were too broad in terms and scope,

unduly burdensome, oppressive, annoying, and called for information of little or no practical benefit to plaintiff.

A letter of May 23, 1983, from Carl Warren and Company to plaintiff's counsel, regarding the subject accident, was read to the jury, as follows: "Since our last correspondence with your office, we have conducted an exhaustive effort with regard to locating any information on the above-captioned incident. [¶] We have again been in contact with [defendant] and have been advised they can find no record of this incident ever occurring. We have also checked with regard to the description of the bus driver, but they find they have no record of a driver fitting this description driving in the accident area at that time. Furthermore, we have been advised that [defendant] cannot even place a bus in the accident location at the time indicated. [¶] In an effort to assist you in this matter, we subsequently were in contact with the RTD, OCTD and Torrance Transit System, all of whom [sic] sometimes operate buses in the Long Beach area, but have found none have a record of this incident. After a careful review of this matter, we are of the opinion that it is a case of no legal liability on the part of [defendant]. In the absence of legal liability, we would not be justified in recommending any settlement and we hereby respectfully deny the claim in its entirety. [¶] As you know, we have been attempting to locate information on this matter since September 1982. Unless your client can provide additional information, such as a bus driver, plus vehicle number, et cetera, we have no alternative but to stand firm on our denial, since we have no evidence to connect [defendant] to the incident. We are sorry we cannot be of more assistance to you in this matter."

The jury was instructed, in part, as follows:

"In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

"1. That the defendant, the Long Beach Public Transportation Company, or its employee bus driver, were negligent in conducting an investigation to obtain information relating to the driver and vehicle that rear ended the bus, or

"2. That the defendant, Long Beach Public Transportation Company and/or its employees were negligent in that after obtaining the information [they] either lost, misplaced, destroyed or refused to disclose the information to the plaintiff.

"3. The nature and extent of plaintiff's damages." (BAJI No. 2.60.)

The jury was also instructed that the defendant was a common carrier operating a bus on which the plaintiff was a passenger for hire (BAJI No. 6.50), and that "a common carrier's duty to investigate is one of ordinary and reasonable care."

On June 12, 1984, the jury returned its verdict awarding plaintiff damages in the amount of $17,500. Following denial of its motion for new trial on September 6, 1984, defendant filed a timely notice of appeal on September 25, 1984.

On October 9, 1984, plaintiff served a writ of execution on defendant. Defendant's ex parte application to quash the writ on the ground that defendant is a public entity against which a writ of execution may not issue was granted on November 20, 1984. Defendant was awarded attorney fees in the amount of $1,000 pursuant to the provisions of Code of Civil Procedure section 128.5.

Thereafter, plaintiff sought relief from the order granting attorneys fees on the ground that it resulted from surprise, mistake, and excusable neglect on the part of plaintiff's counsel. (Code Civ. Proc., § 473.) This motion was denied on February 5, 1985. Plaintiff's notice of appeal was timely filed on February 22, 1985.

The appeals have been consolidated.

## DISCUSSION

### Defendant's Appeal

*The Common Carrier's Duty*

■ Defendant contends the judgment must be reversed because defendant is a public corporation and plaintiff failed to establish a statutory basis for imposition of liability upon it. It is settled that the liability of a common carrier to its passengers is the same whether the carrier is a public or a private entity. (*Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785 [221 Cal.Rptr. 840, 710 P.2d 907].) The carrier's duty is described in Civil Code section 2100, which provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." This standard is set forth in BAJI No. 6.51, which was given to the jury.

■ Defendant contends the trial court erred in ruling that a common carrier has a special relationship with its passengers giving rise to a duty

to investigate and to assemble evidence for future civil litigation. Defendant urges this court to adopt the analysis applied to the duty of a police officer in *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137]. The *Williams* court stated: "[A]lthough 'no special relationship may exist between members of the California Highway Patrol and the motoring public generally, or between the Patrol and stranded motorists generally' [citation], when the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization. [Citations.]" (*Id.*, at p. 24.)

■ With respect to *Williams*, the *Lopez* court observed: "Our statement in *Williams* was essentially a particularized application of the 'good Samaritan' doctrine which provides that a 'volunteer who, *having no initial duty to do so,* undertakes to come to the aid of another . . . is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking' (*Williams,* 34 Cal.3d at p. 23, italics added.) ■ Implicit in our discussion in *Williams* is the recognition that some relationships by their very nature are 'special' ones giving rise to an 'initial duty' to come to the aid of others, regardless of whether there has been detrimental reliance in a particular case. The relationship between a common carrier and its passengers is just such a special relationship, as is the relationship between an innkeeper and his or her guests, between a possessor of land and those who enter in response to the landowner's invitation and between a psychiatrist and his or her patients. [Citations.] [¶] . . . [¶] ■ Contrary to RTD's assertion, there is nothing anomalous about finding this kind of special relationship between a common carrier and its passengers when no such relationship has been found to exist between police officers and members of the general public. In contrast to a police officer's generalized duty to the public as a whole, common carriers have a specific statutory duty to provide for the safe carriage of those specific individuals who have accepted the carrier's offer of transportation and have put their safety, and even their lives, in the carrier's hands." (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d 780, 788-790.)

The question in our case goes to the nature and extent of the duty arising out of the special relationship recognized in *Lopez.* We find no case, and plaintiff cites none, in which a carrier's duty has been held to extend beyond the duty to protect its passengers from physical harm and to see that they are cared for if injured. ■ According to the Restatement, "A common carrier is under a duty to its passengers to take reasonable action [¶] (a) to protect them against unreasonable risk of physical harm, and [¶] (b) to give

them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." (Rest.2d Torts, § 314A.) It follows that a carrier must exercise care in selecting and training drivers, and the drivers, as agents of the carrier, must exercise care in the transportation of passengers. A carrier also has a duty to exercise the utmost care and diligence to protect passengers from third-party assaults, and is liable for injuries resulting therefrom "where, in the exercise of the required degree of care, the carrier has or should have knowledge from which it may reasonably be apprehended that an assault on a passenger may occur, and has the ability in the exercise of that degree of care to prevent the injury. [Citation.]" (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at p. 791.)

In the case at bench, we are asked to recognize an expanded duty on the part of the carrier to assist its passengers in pursuing civil litigation against third parties who cause them harm. The term "duty" is "'"only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts [3d ed.] at pp. 332-333.)'" (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 749-750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701], citing *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) "The existence of 'duty' is a question of law. [Citation.] '[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.' [Citation.]" (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 750.) "The real basis of negligence is not carelessness, but behavior which society in general views as involving unreasonable risk of harm to others. (Prosser, Law of Torts (3d ed. 1964) § 31, pp. 148-149.)" (*Richard P.* v. *Vista Del Mar Child Care Service* (1980) 106 Cal.App.3d 860, 866 [165 Cal.Rptr. 370].)

"[I]n considering the existence of 'duty' in a given case several factors require consideration including 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, costs, and prevalence of insurance for the risk involved. [Citations.]' [Citations.] When public agencies are involved, additional elements include 'the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon

it by budget; . . .' [Citations.]" (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 750.)

When we apply the relevant considerations of policy we find that they militate strongly in favor of a finding of duty.

A carrier can readily foresee the possibility of harm to its passengers by reason of its failure to collect and preserve information concerning a motorist involved in an accident with the carrier's vehicle, in that the passengers could be foreclosed, as was plaintiff, from recovery against such a motorist for any injuries they sustained in the accident. The duty to collect and preserve accident-related information imposes no undue burden upon a carrier, which would presumably, as did defendant, have a procedure in place for the reporting of accidents by its drivers, if only for its own benefit.

Conversely, absent such a duty on the part of the carrier, each passenger would be obliged to alight from the carrier's vehicle and seek the requisite information for himself or herself. Such a practice would be unwieldy, unduly time-consuming, and possibly even dangerous. It would also require the cooperation of the carrier's driver in waiting for passengers to collect the information, a process that could seriously interfere with the carrier's schedule.

We hold that, following an accident between its vehicle and that of another, a common carrier has a duty to collect and preserve information concerning the other vehicle and its driver for use by the carrier's passengers in future civil litigation.

*Jury Instructions*

Defendant contends the trial court erred in refusing to instruct on comparative negligence. For the reasons stated above, we hold that the court properly refused the proffered instructions.

Defendant contends the trial court erred in giving the jury BAJI No. 2.60, *supra,* in that the instruction fails to make it clear that the information defendant did not obtain or failed to preserve "must have been sufficient to identify the other driver, a necessary prerequisite to liability." The instruction refers to negligent failure to obtain or preserve "information relating to the driver and vehicle that rear ended the bus." Defendant argues that this language failed to require the jury to resolve the question whether or not the accident was hit-and-run. In our view, the instruction permitted a verdict in plaintiff's favor only upon a finding that the requisite information was available to defendant at the scene of the accident.

■ Defendant contends the court erred in giving the jury paragraph 2 of BAJI No. 2.60, in that there was no substantial evidence supporting a theory of negligent safekeeping. On the contrary, the jury could infer from Lang's testimony that defendant's driver, Cowell, did in fact obtain information from the driver of the other vehicle, and that he or another agent or employee of the defendant company negligently lost, misplaced, destroyed or refused to disclose the information to plaintiff.

■ Defendant points to declarations of two jurors offered in support of defendant's motion for new trial as establishing that the jury failed to resolve the question whether the accident was hit-and-run. The declarations are identical, conclusory, and purport to report the thought processes by which the jury collectively arrived at its verdict. Of necessity, the declaring jurors purport to appreciate the individual thought processes of their fellow jurors, as well as to report their own. Such evidence is not admissible under Evidence Code section 1150.[1] "The only improper influences that may be proved under section 1150 to impeach a verdict . . . are those open to sight, hearing, and the other senses and thus subject to corroboration." (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 350 [78 Cal.Rptr. 196, 455 P.2d 132].) The present declarations do not meet the standards set forth in Evidence Code section 1150 and *People* v. *Hutchinson, supra. (Cove, Inc.* v. *Mora* (1985) 172 Cal.App.3d 97, 100-103 [218 Cal.Rptr. 7].)

Defendant's authorities are readily distinguishable from the case at bench. In *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], "the declarations established that not only had the jury discussed and considered inclusion of attorney fees, but had expressly agreed to inflate damages to include attorney fees." (*Tramell* v. *McDonnell Douglas Corp.* (1984) 163 Cal.App.3d 157, 172 [209 Cal.Rptr. 427].) In *Tramell,* "[t]he trial judge found, upon contradictory evidence, that there was an extensive discussion among the jurors evidencing an implied agreement to inflate their verdict to compensate for attorney fees and taxes." (*Id.,* at pp. 172-173.) The court held that "[t]his finding . . ., having been based upon competent, though contradictory evidence, is not to be disturbed on appeal." (*Id.,* at p. 173.)

In *Drust* v. *Drust* (1980) 113 Cal.App.3d 1 [169 Cal.Rptr. 750], the declarations of all twelve jurors as to the components of their total award

---

[1]Evidence Code section 1150 provides: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined. [¶] (b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."

of damages were placed into evidence by the plaintiff for the purpose of justifying the fees of his expert witness on the question of economic loss. The court determined that in light of the manner in which the declarations came into the record, and the fact that they were "susceptible of being interpreted as describing the overt act of awarding a particular sum for a particular element of damage," (*id.*, at p. 9) it was not improper to consider the information thus presented. (*Id.*, at p. 11; but see *Ferreira* v. *Quick Stop Markets, Inc.* (1983) 141 Cal.App.3d 1023, 1033-1035 [190 Cal.Rptr. 778].)

The present declarations more closely resemble those found inadequate in *Cove, Inc.* v. *Mora, supra,* 172 Cal.App.3d 97. There, the declarations were limited to assertions as to matters found by the jury in arriving at its verdict. Here, the two jurors also declared that the jury made no findings as to certain matters. In neither case did the declaring jurors relate "objective and verifiable incidents." (*Id.*, at p. 103; *Ferreira* v. *Quick Stop Markets, Inc., supra,* 141 Cal.App.3d at p. 1035.) The declarations did not constitute competent evidence in support of defendant's new trial motion, which was properly denied.

Finally, defendant contends the trial court erred in admitting evidence of, and instructing the jury on, willful suppression of evidence. (BAJI Nos. 2.60, 2.03.) ■ In light of the evidence tending to establish that some information concerning the subject accident was transmitted by defendant's driver to his dispatcher, and that defendant claimed to have no information at all about the accident in response to subsequent inquiry, we cannot say that the court erred in instructing the jury on willful suppression of evidence.

■ With respect to the evidence on this issue, defendant complains of the court's admission of the earlier described interrogatories, answers thereto, and letter from defendant's insurance agent to plaintiff's counsel. These items were relevant to the question whether defendant was at fault in failing to provide plaintiff with the information he needed to pursue an action against the third party tortfeasor, through either negligence or willful acts of suppression. Insofar as defendant objects to admission of the letter on the ground of lack of foundation, the record shows that plaintiff's counsel provided the requisite foundational facts. With respect to defendant's claim that the letter constituted inadmissible hearsay, it was not admitted for the truth of its content, but only to show that the same was communicated to plaintiff. Finally, we find no abuse of discretion in the trial court's denial of defendant's motion to exclude the letter pursuant to Evidence Code section 352.

*Plaintiff's Appeal*

*Sanctions*

Plaintiff contends the trial court abused its discretion in denying his motion for relief from the order granting attorney fees to defendant.

In a declaration supporting defendant's motion to quash the writ of execution, attorney Raymond T. Kaiser stated that he spoke with plaintiff's counsel, Joseph L. Shalant, on October 26, 1984, in an effort to persuade him to withdraw the writ. According to Kaiser, Shalant advised him that upon proof that defendant was a public corporation, Shalant would stipulate to withdrawal of the writ. Kaiser referred to the accompanying declaration of Clark Heggeness, corporate counsel for defendant, stating that it "should satisfy attorney Shalant's demands in this regard."

Heggeness declared that defendant was an instrumentality of the City of Long Beach at the time of the alleged incident, and had remained such thereafter. He attached a copy of defendant's articles of incorporation, which established that all of the authorized shares of defendant's capital stock were issued to the City of Long Beach or to a trustee designated by the city.

Plaintiff's response to the motion to quash, filed November 13, 1984, was based on Shalant's declaration, wherein he claimed that he was unaware of the existence of any exemption when he obtained the writ of execution. Shalant stated, "If the court is satisfied that defendant is a public corporation entitled to immunity from plaintiff's writ of execution, the court should act accordingly with respect to quashing our writ of execution."

In support of plaintiff's motion for relief from the order granting attorney fees, Shalant again declared that he had believed defendant to be a private corporation, that he would not have obtained the writ had he known otherwise, and that he would have entered into a stipulation withdrawing the writ had Kaiser called him again or submitted a stipulation for his signature. Shalant also stated that he had been unable to appear at the hearing on the motion to quash because he was engaged in an arbitration hearing. Finally, Shalant challenged the amount of the attorney fees requested by defendant, characterizing it as excessive for "a single court appearance to argue an unopposed motion."

In opposition to the motion, Kaiser pointed out that defendant was described as "a public corporation" in its answer to the complaint and in all documents thereafter filed by it, that plaintiff made no showing at the trial

that defendant was other than a public corporation, that plaintiff's counsel, Shalant, "had irrefutable evidence in his hands on November 9, 1984 that defendant was in fact a public corporation," but, rather than withdrawing the writ, filed a response to the motion to quash calling upon the court to determine whether defendant was in fact a public corporation. Kaiser noted that Shalant had failed to appear at the hearing on the motion to quash, without then offering any explanation to the court or opposing counsel. Kaiser also declared that the actual fee charged defendant for legal services in opposing and quashing plaintiff's writ of execution was $1,189.50, calculated at $65 per hour.

Code of Civil Procedure section 473 provides that a court may relieve a party or his or her counsel "from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect." Plaintiff's position is that his counsel made a good faith mistake in assuming that defendant was a private corporation subject to a writ of execution, and that counsel's failure to withdraw the writ upon receipt of defendant's opposition was not unreasonable in the circumstances.

Plaintiff overlooks the facts that counsel not only failed to withdraw the writ, thus requiring defendant to appear at the hearing on the motion to quash, but also failed to oppose defendant's request for sanctions. In the circumstances, we cannot say that the trial court abused its discretion in denying plaintiff's belated request for relief from the order imposing sanctions. (See *Guenter* v. *Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 466-467 [189 Cal.Rptr. 470].) Moreover, and quite apart from the fact that any dispute as to the amount of the sanction award should have been raised at the hearing on the motion to quash, the only evidence before the court at that hearing, with respect to defendant's costs in moving to quash, supported the award of $1,000.

## DECISION

The judgment and order are affirmed.

Klein, P. J., and Lui, J., concurred.